# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| Diane Lamprey, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )          Docket No. |
| | ) |
| Wells Fargo Home Mortgage d/b/a | ) |
| America's Servicing Company, | ) |
| | ) |
| The Bank of New York Mellon Trust | ) |
| Company, N.A., f/k/a The Bank of New | ) |
| York Trust Company, N.A., as Successor- | ) |
| In-Interest to JPMorgan Chase Bank, N.A., | ) |
| For Certificateholders of Nomura Asset | ) |
| Acceptance Corporation Mortgage Pass- | ) |
| Through Certificates, Series, | ) |
| | ) |
| Defendants. | ) |

## <u>COMPLAINT</u>

### Introduction

This is an action for actual, compensatory, statutory, and punitive damages brought by Diane Lamprey (the "Plaintiff"), an individual consumer, against Wells Fargo Home Mortgage d/b/a America's Servicing Company ("Wells Fargo") and The Bank of New York Mellon Trust Company, N.A., f/k/a The Bank of New York Trust Company, N.A., as Successor-In-Interest to JPMorgan Chase Bank, N.A., as Trustee for Nomura Asset Acceptance Corporation, Alternative Loan Trust Series 2005-AR2 ("BNY Mellon") (collectively, the "Defendants"), for violations of the Bankruptcy Code's Automatic Stay pursuant to 11 U.S.C. § 362, the Bankruptcy Code's Discharge Injunction pursuant to 11 U.S.C. § 524, the Maine Consumer Credit Code, 9-A M.R.S.A. § 9-403, the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, and

the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §§ 11001 *et seq.* (collectively, the "FDCPA").

## I.    Jurisdiction and Venue

1. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1367.

2. Venue is proper here pursuant to 28 U.S.C. § 1391, as the Plaintiff is a resident of York County, Maine, all relevant events giving rise to the Plaintiff's claims occurred in this District, and Defendants were doing business in Maine during all relevant times.

## II.    Parties

3. Plaintiff Diane Lamprey is a natural person residing in York, Maine.

4. Defendant Wells Fargo is a division of Wells Fargo Bank, N.A., with its principal place of business in Des Moines, Iowa.

5. Defendant BNY Mellon, a subsidiary of The Bank of New York Mellon Corporation, is a banking corporation organized under the laws of California that upon information and belief has a principal place of business in Ft. Mill, South Carolina.

6. Defendant BNY Mellon acquired interest in the Plaintiff's loan on or around May 26, 2009, when said loan was in default.

7. Upon information and belief, Defendant Wells Fargo began servicing the Plaintiff's loan around May 26, 2009.

8. Defendant Wells Fargo does business as America's Servicing Company. According to its own website, "America's Servicing Company (ASC) is a division of Wells Fargo Home Mortgage that services loans for other investors under the America's Servicing Company name."

9.  Defendant Wells Fargo serviced the Plaintiff's loan using the America's Servicing Company identity; several of the direct communications sent to the Plaintiff include the following identifying information: "Wells Fargo Home Mortgage, doing business as America's Servicing Company, is a division of Wells Fargo Bank, N.A."

10. The Wells Fargo loan number for the subject loan ends in 3154.

11. Upon information and belief the Plaintiff's loan was in default when Wells Fargo acquired servicing of the loan.

12.  Upon information and belief, Defendant Wells Fargo has been the servicer of the Plaintiff's loan for, and under the authority, direction, and control of, Defendant BNY Mellon at all times relevant to this matter.

13. As servicer of the Plaintiff's loan, Defendant Wells Fargo was acting as the agent of Defendant BNY Mellon.

14. By employing Defendant Wells Fargo to service the Plaintiff's loan, Defendant BNY Mellon was acting as the principal of Defendant Wells Fargo.

15. Defendant Wells Fargo engages in the business of collecting debts in this State.

16. Defendant Wells Fargo regularly engages in the enforcement of security interests securing debts.

17. Defendant Wells Fargo engages in the collection of debts using the mails and/or the telephone, and Defendant Wells Fargo regularly attempts to collect debts alleged to be due to another.

18. Upon information and belief, Defendant Wells Fargo is a "debt collector" as that term is defined in the FDCPA, 15 U.S.C. § 1692a(6), 32 M.R.S.A. § 11002(6).

### III. Facts

19. On or around December 14, 2004, the Plaintiff entered into a mortgage and promissory note (collectively, the "Loan" or "Mortgage Loan") in the amount of $325,000.00 with Mortgage Network, Inc., and Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee of Mortgage Network, Inc., on her property located at 449 Brixham Road, Eliot, Maine, 03903 (the "Property"). A true and accurate copy of the Mortgage Loan is incorporated herein by reference and attached hereto as Exhibit 1.

20. The Plaintiff divorced her now-former husband, Stephen S. Lamprey, on July 27, 2007. As part of the Divorce Judgment, the Plaintiff was awarded all rights, title, and interest in the Property.

21. On or around May 26, 2009, MERS transferred its interest in the Loan to Defendant BNY Mellon.

22. Upon information and belief, Wells Fargo began servicing the Plaintiff's loan around this time.

23. At the time Defendant BNY Mellon acquired the Plaintiff's Mortgage Loan, the Loan was in default, the Plaintiff having last made a payment on the Loan in October 2008.

24. On June 11, 2009, the Plaintiff was served with a summons and complaint for foreclosure on the Property by Defendant BNY Mellon.

25. On August 27, 2010, Judgment of Foreclosure and Sale ("Foreclosure Judgment") was entered in favor of Defendant BNY Mellon, care of Defendant Wells Fargo, with regard to the Property. The 90-day redemption period ran and the Plaintiff did not redeem the Property. A true and accurate copy of the Foreclosure Judgment is incorporated herein by reference and attached hereto as Exhibit 2.

26. The Plaintiff vacated the Property in October of 2010, believing that she needed to move out following the Foreclosure Judgment.

27. On October 12, 2010, the Plaintiff filed her Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the District of Maine, initiating Case No. 10-21713. A true and accurate copy of the Plaintiff's Chapter 13 Petition is incorporated herein by reference and attached hereto as Exhibit 3.

28. Defendant Wells Fargo is listed as a creditor in the Plaintiff's creditor matrix and therefore received notice of the Plaintiff's Bankruptcy filing. Exhibit 3.

29. On or around October 15, 2010, Defendant Wells Fargo sent a letter to the Plaintiff titled "Escrow Disclosure Statement and Notice of New Mortgage Payment," informing the Plaintiff that her new monthly payment amount would take effect starting November 1, 2010. A true and accurate copy of the October 15, 2010, letter is incorporated herein by reference and attached hereto as Exhibit 4.

30. On October 19, 2010, the Plaintiff filed her Bankruptcy Schedules and Statements, Docket Entry ("D.E.") # 7 in Case No. 10-21713. A true and accurate copy of the Plaintiff's Bankruptcy Schedules and Statements is incorporated herein by reference and attached hereto as Exhibit 5.

31. Defendant Wells Fargo is listed in the Plaintiff's Schedule D as a creditor holding a secured claim, said claim listed as being secured by a lien on the Property. Exhibit 5.

32. On October 19, 2010, the Plaintiff filed her Chapter 13 Bankruptcy Plan, D.E. # 8 in Case No. 10-21713. A true and accurate copy of the Plaintiff's Chapter 13 Plan is incorporated herein by reference and attached hereto as Exhibit 6.

33. In Section 3-G of the Plaintiff's Chapter 13 Plan, Collateral To Be Surrendered, the Plaintiff included the Property as being surrendered, lists Defendant Wells Fargo as the first secured creditor with regard to whom the Property served as collateral, and included as explanatory detail the August 27, 2010, Judgment of Foreclosure and Sale entered in favor of Defendant BNY Mellon. Exhibit 6.

34. On January 11, 2011, the Plaintiff's Chapter 13 Plan was confirmed, D.E. # 18 in Case No. 10-21713. A true and accurate copy of the Order confirming the Plan, including the BNC Notice Certificate, is incorporated herein by reference and attached hereto as Exhibit 7.

35. On or around April 6, 2011, Defendant Wells Fargo sent a letter to the Plaintiff, informing her of a force-placed insurance policy that Defendant Wells Fargo had obtained on the Property, the effectiveness date of which was stated to be January 18, 2011. The letter further informs the Plaintiff that the premium for this force-placed insurance will be charged to her escrow account and that her "monthly mortgage payment will be increased" to pay for this force-placed insurance acquired on the Property by Defendant Wells Fargo. The insurance policy Defendant Wells Fargo included with the letter states that it carries an annual premium amount/ total charged of $4,237.00. A true and accurate copy of the April 6, 2011, letter is incorporated herein by reference and attached hereto as Exhibit 8.

36. On or around June 9, 2011, Defendant Wells Fargo sent a letter to the Plaintiff informing her of a change in interest rate with regard to the Mortgage Loan, stating that the change in interest rate would be effective July 1, 2011, and that the new monthly payment "due

on August 1, 2011 is $1,100.02." A true and accurate copy of the June 9, 2011, letter is incorporated herein by reference and attached hereto as Exhibit 9.

37. On August 19, 2011, the Order Allowing and Disallowing Claims in the Plaintiff's Chapter 13 Bankruptcy case was signed and entered. That Order confirms that the Plaintiff surrendered the Property. Defendant Wells Fargo received Notice of the Order being signed and entered. A true and accurate copy of the August 19, 2011, Order Allowing and Disallowing Claims, including the Bankruptcy Noticing Center list of recipients, is incorporated herein by reference and attached hereto as Exhibit 10.

38. On or around August 29, 2011, Defendant Wells Fargo sent a letter to the Plaintiff, requesting that, if the Plaintiff was represented by counsel, that said counsel be identified, counsel's contact information be provided, and that the reason for the representation be stated. A true and accurate copy of the August 29, 2011, letter is incorporated herein by reference and attached hereto as Exhibit 11.

39. On September 9, 2011, the Plaintiff's attorneys, Molleur Law Office, faxed an executed response to Defendant Wells Fargo, answering the August 29, 2011, letter (Exhibit 11), for which the Plaintiff incurred reasonable attorneys' fees and costs in her bankruptcy case. The faxed response identifies Molleur Law Office as representing the Plaintiff in her Chapter 13 Bankruptcy, Case No. 10-21713, and provides Defendant Wells Fargo with Molleur Law Office's address and telephone number. A true and accurate copy of the September 9, 2011, fax is incorporated herein by reference and attached hereto as Exhibit 12.

40. The Plaintiff did not provide subsequent authorization for Wells Fargo to contact her directly.

41. On or around November 9, 2011, Defendant Wells Fargo sent a letter to Molleur Law Office requesting confirmation that Molleur Law Office represented the Plaintiff and threatening that if Defendant Wells Fargo did not receive a response within fourteen (14) days, it would resume sending direct communications to the Plaintiff. A true and accurate copy of the November 9, 2011, letter is incorporated herein by reference and attached hereto as Exhibit 13.

42. On November 18, 2011, Molleur Law Office faxed confirmation of its representation of the Plaintiff to Defendant Wells Fargo, and further informed Defendant Wells Fargo that it had previously been provided this information on September 9, 2011 (Exhibit 12), for which the Plaintiff incurred reasonable attorneys' fees and costs in her bankruptcy case. A true and accurate copy of the November 18, 2011, fax is incorporated herein by reference and attached hereto as Exhibit 14.

43. On or around November 22, 2011, Defendant Wells Fargo sent a letter to the Plaintiff, informing her that the force-placed insurance Defendant Wells Fargo had obtained on the Property was scheduled to expire on January 18, 2012, and further stated that if the Plaintiff did not purchase insurance for the Property, Defendant Wells Fargo would renew the force-placed insurance and charge the renewal premium to the Plaintiff's escrow account. A true and accurate copy of the November 22, 2011, letter is incorporated herein by reference and attached hereto as Exhibit 15.

44. On January 31, 2012, Defendant Wells Fargo filed a Proof of Claim in the Plaintiff's Chapter 13 Bankruptcy Case, Claim # 13 in Case No. 10-21713. This Proof of Claim did not concern either the Loan or the Property, but rather another piece of real property that had actually been awarded to the Plaintiff's ex-spouse as part of their Divorce Judgment.

A true and accurate copy of Claim # 13 in Case No. 10-21713 is incorporated herein by reference and attached hereto as Exhibit 16.

45. On February 2, 2012, the Plaintiff filed her Objection to Claim, D.E. # 43 in Case No. 10-21713, objecting to Claim # 13. The Plaintiff objected on the grounds that Defendant Wells Fargo's Proof of Claim was untimely and concerned real property that was solely the responsibility of the Plaintiff's ex-spouse. A true and accurate copy of the Objection to Claim is incorporated herein by reference and attached hereto as Exhibit 17.

46. On March 13, 2012, the Bankruptcy Court entered its Order on Objection to Claim, D.E. # 44 in Case No. 10-21713. The Order sustained the Plaintiff's Objection to Defendant Wells Fargo's Proof of Claim # 13 and disallowed that Claim in its entirety. A true and accurate copy of the Order on Objection to Claim is incorporated herein by reference and attached hereto as Exhibit 18.

47. Defendant Wells Fargo never filed a Proof of Claim for the subject Loan or Property.

48. On or around July 25, 2012, Defendant Wells Fargo sent a letter to the Plaintiff, informing her that Defendant Wells Fargo had obtained force-placed insurance on the Property, with an effective date of January 18, 2012, and urging the Plaintiff to independently purchase hazard insurance for the Property. The letter further stated that if the Plaintiff wanted to obtain her own insurance for the Property but could not afford to pay the premium, Defendant Wells Fargo could advance the cost and add said cost to the Plaintiff's future monthly payments on the Loan. A true and accurate copy of the July 25, 2012, letter is incorporated herein by reference and attached hereto as Exhibit 19.

49. On or around February 6, 2013, Defendant Wells Fargo sent a letter to the Plaintiff, informing her that Defendant Wells Fargo had obtained force-placed insurance on the

Property, with an effectiveness date of January 18, 2013. The letter further informs the Plaintiff that the annual premium—$3,446.00 according to the policy renewal notice included with the letter—for the force-placed insurance will be charged to the Plaintiff's escrow account and "[y]our monthly mortgage payment may be increased to include the cost of this policy." A true and accurate copy of the February 6, 2013, letter is incorporated herein by reference and attached hereto as Exhibit 20.

50. On or around March 14, 2013, Defendant Wells Fargo communicated directly with the Plaintiff via telephone. Upon information and belief, this telephone call was regarding the Mortgage Loan.

51. On or around March 14, 2013, Defendant Wells Fargo sent a letter to the Plaintiff regarding the Property, stating that one of Defendant Wells Fargo's representatives spoke directly with the Plaintiff that day and requesting that the Plaintiff contact Defendant Wells Fargo again to discuss options for assisting her with her "situation." A true and accurate copy of the March 14, 2013, letter is incorporated herein by reference and attached hereto as Exhibit 21.

52. On or around May 8, 2013, Defendant Wells Fargo sent a letter to the Plaintiff, informing her of a change in her escrow and mortgage payment amounts regarding the Loan for the Property, with a new payment of $1,522.11 due November 1, 2010. A true and accurate copy of the May 8, 2013, letter is incorporated herein by reference and attached hereto as Exhibit 22.

53. On or around June 9, 2013, Defendant Wells Fargo sent a letter to the Plaintiff, informing her of a change in the interest rate and payment on the Mortgage Loan. The letter states that the new monthly total payment will be $1,420.59, due on August 1, 2013. A true and

accurate copy of the June 9, 2013, letter is incorporated herein by reference and attached hereto as Exhibit 23.

54. On or around July 24, 2013, Defendant Wells Fargo sent a letter to the Plaintiff, reminding her that Defendant Wells Fargo had obtained force-placed insurance on the Property and informing the Plaintiff that this insurance is almost certainly more expensive than insurance the Plaintiff might obtain independently. The letter further stated that if the Plaintiff wanted to obtain her own insurance for the Property but could not afford to pay the premium, Defendant Wells Fargo could advance the cost and add said cost to the Plaintiff's future monthly payments on the Loan. A true and accurate copy of the July 24, 2013, letter is incorporated herein by reference and attached hereto as Exhibit 24.

55. On or around October 10, 2013, Defendant Wells Fargo sent a letter to Molleur Law Office requesting confirmation that Molleur Law Office represented the Plaintiff and threatening that if Defendant Wells Fargo did not receive a response within fourteen (14) days, it would resume sending direct communications to the Plaintiff. A true and accurate copy of the October 10, 2013, letter is incorporated herein by reference and attached hereto as Exhibit 25.

56. On October 17, 2013, Defendant Wells Fargo filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges regarding the Mortgage Loan and the Property, D.E. # 64 in Case No. 10-21713. D.E. # 64 lists as these alleged postpetition costs "Utilities" incurred on or around April 23, 2013 (listed twice), and May 28, 2013, and "Property preservation expenses," without additional detail as to what, if anything, was actually done to the Property, incurred on or around May 28, 2013, June 26, 2013 (listed twice), July 24, 2013

(listed twice), July 25, 2013 (listed twice), September 6, 2013, and September 18, 2013 (listed twice). A true and accurate copy of the Notice of Postpetition Mortgage Fees, Expenses, and Charges is incorporated herein by reference and attached hereto as Exhibit 26.

57. On October 23, 2013, Molleur Law Office faxed confirmation of its representation of the Plaintiff to Defendant Wells Fargo, for which the Plaintiff incurred reasonable attorneys' fees and costs in her bankruptcy case. A true and accurate copy of the October 23, 2013, fax is incorporated herein by reference and attached hereto as Exhibit 27.

58. On or around February 14, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, informing her that Defendant Wells Fargo had obtained force-placed insurance on the Property. The enclosed policy provides for an annual premium of $3,589.00, which Defendant Wells Fargo informs the Plaintiff will be charged to her escrow account and "[y]our monthly mortgage payment may be increased to include the cost of this policy." A true and accurate copy of the February 14, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 28.

59. On or around March 17, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, providing Payment, Balance, and Year to date summaries as to the Loan, demanding a "Total Payment" in the amount of $100,523.26, and attaching a payment coupon to be returned by Plaintiff to Defendant Wells Fargo along with payment, the date for which said coupon provides as April 1, 2014. A true and accurate copy of the March 17, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 29.

60. On or around May 29, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, informing her of changes to her escrow and mortgage payment amounts and providing an

effectiveness date of September 1, 2014, for the new total payment amount of $1,438.49. A true and accurate copy of the May 29, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 30.

61. On or around June 9, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, informing her of "Changes to Your Mortgage Interest Rate and Payments" on the Loan with regard to the Property and stating that "your interest rate may change every six months for the rest of your loan term." The letter further provides that the new Total Monthly Payment, in the amount of $1,420.59, is "due August 1, 2014." A true and accurate copy of the June 9, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 31.

62. On or around June 16, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, providing Payment, Balance, and Year to date summaries as to the Loan, demanding a "Total Payment" in the amount of $104,785.03, and attaching a payment coupon to be returned by Plaintiff to Defendant Wells Fargo along with payment, the date for which said coupon provides as July 1, 2014. A true and accurate copy of the June 16, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 32.

63. On or around July 16, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, providing Payment, Balance, and Year to date summaries as to the Loan, demanding a "Total Payment" in the amount of $106,205.62, and attaching a payment coupon to be returned by Plaintiff to Defendant Wells Fargo along with payment, the date for which said coupon provides as August 1, 2014. A true and accurate copy of the July 16, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 33.

64. On or around July 17, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, reminding her that Defendant Wells Fargo had obtained force-placed insurance on the

Property and informing the Plaintiff that this insurance is almost certainly more expensive than insurance the Plaintiff might obtain independently. The letter further stated that if the Plaintiff wanted to obtain her own insurance for the Property but could not afford to pay the premium, Defendant Wells Fargo could advance the cost and add said cost to the Plaintiff's future monthly payments on the Loan. A true and accurate copy of the July 17, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 34.

65. On or around August 18, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, providing Payment, Balance, and Year to date summaries as to the Loan, demanding a "Total Payment" in the amount of $107,644.11, and attaching a payment coupon to be returned by Plaintiff to Defendant Wells Fargo along with payment, the date for which said coupon provides as September 1, 2014. A true and accurate copy of the August 18, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 35.

66. On or around September 16, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, providing Payment, Balance, and Year to date summaries as to the Loan, demanding a "Total Payment" in the amount of $109,082.60, and attaching a payment coupon to be returned by Plaintiff to Defendant Wells Fargo along with payment, the date for which said coupon provides as October 1, 2014. A true and accurate copy of the September 16, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 36.

67. On or around November 17, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, providing Payment, Balance, and Year to date summaries as to the Loan, demanding a "Total Payment" in the amount of $111,604.25, and attaching a payment coupon to be returned by Plaintiff to Defendant Wells Fargo along with payment, the date for which

said coupon provides as December 1, 2014. A true and accurate copy of the November 17, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 37.

68. On or around November 19, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, stating that Defendant Wells Fargo had bought force-placed insurance for the Property, that the cost of said force-placed insurance had been added to the Plaintiff's account, and that the force-placed insurance on the Property was due to expire on January 18, 2015. The letter further informs the Plaintiff of Defendant Wells Fargo's intention to renew the force-placed insurance on the Property, at an estimated annual cost of $3,704.00 to the Plaintiff. A true and accurate copy of the November 19, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 38.

69. On or around December 11, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, informing her of "Changes to Your Mortgage Interest Rate and Payments" on the Loan with regard to the Property and stating that "your interest rate may change every six months for the rest of your loan term." The letter further provides that the new Total Monthly Payment, in the amount of $2,469.14, is "due February 1, 2015." As shown in the letter, this represents a $1,030.65 increase in the Plaintiff's monthly payment alleged due to Defendant Wells Fargo. A true and accurate copy of the December 11, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 39.

70. On December 16, 2014, Defendant Wells Fargo filed a Notice of Mortgage Payment Change regarding the Mortgage Loan and the Property in the Plaintiff's Chapter 13 Bankruptcy case, D.E. # 67 in Case No. 10-21713. D.E. # 67 states that the new total payment of $2,469.14 is due on February 1, 2015. A true and accurate copy of the Notice

of Mortgage Payment Change is incorporated herein by reference and attached hereto as Exhibit 40.

71. Also on or around December 16, 2014, Defendant Wells Fargo sent a letter to the Plaintiff, providing Payment, Balance, and Year to date summaries as to the Loan, demanding a "Total Payment" in the amount of $113,042.74, and attaching a payment coupon to be returned by Plaintiff to Defendant Wells Fargo along with payment, the date for which said coupon provides as January 1, 2015. A true and accurate copy of the December 16, 2014, letter is incorporated herein by reference and attached hereto as Exhibit 41.

72. On or around January 16, 2015, Defendant Wells Fargo sent a letter to the Plaintiff, providing Payment, Balance, and Year to date summaries as to the Loan, demanding a "Total Payment" in the amount of $115,511.88, and attaching a payment coupon to be returned by Plaintiff to Defendant Wells Fargo along with payment, the date for which said coupon provides as February 1, 2015. A true and accurate copy of the January 16, 2015, letter is incorporated herein by reference and attached hereto as Exhibit 42.

73. On or around February 17, 2015, Defendant Wells Fargo sent a letter to the Plaintiff, providing Payment, Balance, and Year to date summaries as to the Loan, demanding a "Total Payment" in the amount of $117,981.02, and attaching a payment coupon to be returned by Plaintiff to Defendant Wells Fargo along with payment, the date for which said coupon provides as March 1, 2015. A true and accurate copy of the February 17, 2015, letter is incorporated herein by reference and attached hereto as Exhibit 43.

74. On or around March 16, 2015, Defendant Wells Fargo sent a letter to the Plaintiff, providing Payment, Balance, and Year to date summaries as to the Loan, demanding a

"Total Payment" in the amount of $120,450.16, and attaching a payment coupon to be returned by Plaintiff to Defendant Wells Fargo along with payment, the date for which said coupon provides as April 1, 2015. A true and accurate copy of the March 16, 2015, letter is incorporated herein by reference and attached hereto as Exhibit 44.

75. On or around May 18, 2015, Defendant Wells Fargo sent a letter to the Plaintiff, providing Payment, Balance, and Year to date summaries as to the Loan, demanding a "Total Payment" in the amount of $125,388.44, and attaching a payment coupon to be returned by Plaintiff to Defendant Wells Fargo along with payment, the date for which said coupon provides as June 1, 2015. A true and accurate copy of the May 18, 2015, letter is incorporated herein by reference and attached hereto as Exhibit 45.

76. On or around May 28, 2015, Defendant Wells Fargo sent a letter to the Plaintiff, informing her on the results of Defendant Wells Fargo's latest review of the Plaintiff's escrow account. The letter further provides a "[n]ew escrow and mortgage payment amount" of $2,499.25, with an effective date of September 1, 2015. According to the letter, this represents an increase of $717.43 to the monthly payment Defendant Wells Fargo alleged was owed monthly by the Plaintiff. A true and accurate copy of the May 28, 2015, letter is incorporated herein by reference and attached hereto as Exhibit 46.

77. On June 2, 2015, the Discharge of Debtor After Completion of Chapter 13 Plan was Ordered in the Plaintiff's Bankruptcy case, D.E. # 78 in Case No. 10-21713. A true and accurate copy of the Discharge Order, including the BNC Certificate of Notice, is incorporated herein by reference and attached hereto as Exhibit 47.

78. Defendant Wells Fargo is listed in the Discharge Order's Certificate of Notice and therefore received notice of the Plaintiff's Chapter 13 Bankruptcy discharge. Exhibit 48.

79. Defendant Wells Fargo received notices of docket entries made throughout the duration of the Plaintiff's Chapter 13 Bankruptcy case. A true and accurate copy of the Docket Report for Case No. 10-21713 is incorporated herein by reference and attached hereto as Exhibit 49.

80. On or around June 9, 2015, Defendant Wells Fargo sent a letter to the Plaintiff, informing her of "Changes to Your Mortgage Interest Rate and Payments" on the Loan with regard to the Property and stating that "your interest rate may change every six months for the rest of your loan term." The letter further provides that a Total Monthly Payment in the amount of $2,469.14 is "due August 1, 2015." A true and accurate copy of the June 9, 2015, letter is incorporated herein by reference and attached hereto as Exhibit 50.

81. On or around June 16, 2015, Defendant Wells Fargo sent a letter to the Plaintiff, providing Payment, Balance, and Year to date summaries as to the Loan, demanding a "Total Payment" in the amount of $127,857.58, and attaching a payment coupon to be returned by Plaintiff to Defendant Wells Fargo along with payment, the date for which said coupon provides as July 1, 2015. A true and accurate copy of the June 16, 2015, letter is incorporated herein by reference and attached hereto as Exhibit 51.

82. On or around July 17, 2015, Defendant Wells Fargo sent a letter to the Plaintiff, reminding her that Defendant Wells Fargo had obtained force-placed insurance on the Property and informing the Plaintiff that this insurance is almost certainly more expensive than insurance the Plaintiff might obtain independently. The letter further stated that if the Plaintiff wanted to obtain her own insurance for the Property but could not afford to pay the premium, Defendant Wells Fargo could advance the cost and add said cost to the Plaintiff's future monthly payments on the Loan. A true and accurate

copy of the July 17, 2015, letter is incorporated herein by reference and attached hereto as Exhibit 52.

83. On or around August 5, 2015, a representative from Wells Fargo went on to the Property for a "home inspection" and left a notice at the Property, declaring that the inspector found the Property to be vacant or abandoned as of that date. A true and accurate copy of the August 5, 2015, notice is incorporated herein by reference and attached hereto as Exhibit 53.

84. On or around December 10, 2015, Defendant Wells Fargo sent a letter to the Plaintiff, informing her of "Changes to Your Mortgage Interest Rate and Payments" on the Loan with regard to the Property and stating that "your interest rate may change every six months for the rest of your loan term." The letter further provides that a Total Monthly Payment in the amount of $2,537.54, is "due February 1, 2016." As shown in the letter, this represents a $38.29 increase in the Plaintiff's monthly payment alleged due to Defendant Wells Fargo. A true and accurate copy of the December 10, 2015, letter is incorporated herein by reference and attached hereto as Exhibit 54.

85. On or around January 27, 2016, Defendant Wells Fargo sent a letter to the Plaintiff, informing her that Defendant Wells Fargo had obtained force-placed insurance on the Property, with an effectiveness date of January 18, 2016. The letter further informs the Plaintiff that the annual premium—$3,777.00 according to the policy renewal notice included with the letter—for the force-placed insurance will be charged to the Plaintiff's account. A true and accurate copy of the January 27, 2016, letter is incorporated herein by reference and attached hereto as Exhibit 55.

86. On or around June 9, 2016, Defendant Wells Fargo sent a letter to the Plaintiff, informing her of "Changes to Your Mortgage Interest Rate and Payments" on the Loan with regard to the Property and stating that "your interest rate may change every six months for the rest of your loan term." The letter further provides that a Total Monthly Payment in the amount of $2,594.50, is "due August 1, 2016." As shown in the letter, this represents a $56.96 increase in the Plaintiff's monthly payment alleged due to Defendant Wells Fargo. Furthermore, the letter provides that the Plaintiff's interest rate on the Mortgage Loan will also increase, from 2.875% to 3.25%. A true and accurate copy of the June 9, 2016, letter is incorporated herein by reference and attached hereto as Exhibit 56.

87. On or around June 23, 2016, Defendant Wells Fargo sent a letter to the Plaintiff, informing her on the results of Defendant Wells Fargo's latest review of the Plaintiff's escrow account. The letter informs the Plaintiff that her "loan is now delinquent." Defendant Wells Fargo then presents the Plaintiff with two options for curing the alleged delinquency "when your loan becomes current": 1) pay the entire shortage, $7,953.17, at once, and have her monthly payment increased to $2,607.09, or 2) pay the shortage over twelve months and have her monthly payment increased to $3,269.85. According to the letter, this represents an increase of as much as $1,488.03 to the monthly payment Defendant Wells Fargo alleged it was owed by the Plaintiff, with an effective date of September 1, 2016. A true and accurate copy of the June 23, 2016, letter is incorporated herein by reference and attached hereto as Exhibit 57.

88. On or around June 30, 2016, Defendant Wells Fargo sent a letter to the Plaintiff, alleging that the Loan "is in default for failure to make timely payments." Defendant Wells Fargo further informs the Plaintiff in the letter that in order to avoid the Loan being accelerated,

and Defendant Wells Fargo pursuing the remedies provided for in the Mortgage Loan, the Plaintiff needed to pay to Defendant Wells Fargo $160,254.85 by August 9, 2016. The letter threatens that if this payment is not made by the Plaintiff, Defendant Wells Fargo may accelerate the Loan, making it immediately due in its entirety, as well as taking "steps to terminate your ownership in the property by a foreclosure proceeding." A true and accurate copy of the June 30, 2016, letter is incorporated herein by reference and attached hereto as Exhibit 58.

89. On or around July 18, 2016, Defendant Wells Fargo sent a letter to the Plaintiff, reminding her that Defendant Wells Fargo had obtained force-placed insurance on the Property and informing the Plaintiff that this insurance is almost certainly more expensive than insurance the Plaintiff might obtain independently. The letter further stated that if the Plaintiff wanted to obtain her own insurance for the Property but could not afford to pay the premium, Defendant Wells Fargo could advance the cost and add said cost to the Plaintiff's future monthly payments on the Loan. A true and accurate copy of the July 18, 2016, letter is incorporated herein by reference and attached hereto as Exhibit 59.

90. On or around July 28, 2016, Defendant Wells Fargo sent a letter to the Plaintiff, informing her that a settlement agreement in a bankruptcy case in the United States Bankruptcy Court for the District of Maryland, which upon information and belief is unrelated to the Plaintiff's Bankruptcy case, caused Defendant Wells Fargo to review the Plaintiff's account. As a result of the review, Defendant Wells Fargo claimed, it credited the Plaintiff's account for $1,968.00. A true and accurate copy of the July 28, 2016, letter is incorporated herein by reference and attached hereto as Exhibit 60.

91. On or around July 29, 2016, Defendant Wells Fargo sent a letter to the Plaintiff, informing her that as of that date "there is a balance of $186.18 in an unapplied funds account" for the Loan. Defendant Wells Fargo further informed the Plaintiff that it would be holding those funds until the Plaintiff paid an additional $1,595.64, totaling $1,781.82, which Defendant Wells Fargo states was due December 1, 2008. A true and accurate copy of the July 29, 2016, letter is incorporated herein by reference and attached hereto as Exhibit 61.

92. On or around August 10, 2016, Defendant Wells Fargo sent a letter to the Plaintiff, informing her that unapplied funds—no amount is stated in the letter—totaling less than a full monthly payment on the Loan were being returned to the Plaintiff. The letter further states that the Loan may be referred to foreclosure and requests that the Plaintiff contact Defendant Wells Fargo via telephone to discuss her options. A true and accurate copy of the August 10, 2016, letter is incorporated herein by reference and attached hereto as Exhibit 62.

93. On August 17, 2016, the Plaintiff's attorney sent a letter to Defendant Wells Fargo, informing it that the Plaintiff is represented by counsel. The letter further states that the Plaintiff filed her Chapter 13 Bankruptcy case on October 12, 2010, received her Chapter 13 Bankruptcy discharge on June 2, 2015, and that Defendant Wells Fargo received notice of the discharge from the Bankruptcy Court on June 4, 2015. The letter continues that by repeatedly contacting the Plaintiff regarding the Loan, a debt that had been discharged in bankruptcy, Defendant Wells Fargo was violating the discharge injunction provisions of the Bankruptcy Code. The letter demands that Defendant Wells Fargo cease all contact with the Plaintiff, direct all future communications to the Plaintiff's counsel,

and stop all attempts to collect on the debt within thirty days or remedies for the discharge injunction violation would be pursued. A true and accurate copy of the August 17, 2016, letter is incorporated herein by reference and attached hereto as Exhibit 63.

94. On or around August 22, 2016, Defendant Wells Fargo sent a letter to the Plaintiff's attorney, acknowledging receipt of the Augusta 17, 2016, letter (Exhibit 52) and stating that it expected to complete its research and respond on or before September 2, 2016. A true and accurate copy of the August 22, 2016, letter is incorporated herein by reference and attached hereto as Exhibit 64.

95. On or around September 2, 2016, Defendant Wells Fargo sent a letter to the Plaintiff's attorney, stating that, despite having previously said it planned to respond to the Augusta 17, 2016, letter (Exhibit 63) by  September 2, 2016, at the latest (see Exhibit 64), it now needed until September 19, 2016, to respond. A true and accurate copy of the September 2, 2016, letter is incorporated herein by reference and attached hereto as Exhibit 65.

96. On or around September 13, 2016, Defendant Wells Fargo sent a letter to the Plaintiff's attorney, allegedly responding to the August 17, 2016, letter (Exhibit 63) and a "recent" telephone conversation Defendant Wells Fargo had with the Plaintiff. In the letter, Defendant Wells Fargo alleges that because it did not file a Proof of Claim with regard to the Mortgage Loan and the Property in the Plaintiff's Chapter 13 Bankruptcy case— Defendant Wells Fargo admits to receiving notice of the Plaintiff's Bankruptcy filing— the Loan debt was not discharged and the Plaintiff remained liable for that debt. Defendant Wells Fargo further states in the letter that it is allowed to continue to contact the Plaintiff until it receives payment on the Loan due on November 1, 2008. Finally, Defendant Wells Fargo alleges in the letter that the Plaintiff's "account remains due for

the December 1, 2008, through September 1, 2016, mortgage payments and the

foreclosure action has been removed." While the letter states that one of the inquiries it is

intending to respond to provides that the Plaintiff surrendered the Property as part of her

Bankruptcy case, Defendant Wells Fargo never discusses the effect of the surrender of

the Property, despite admitting in its responses that the Plaintiff surrendered the Property

during her bankruptcy. A true and accurate copy of the September 13, 2016, letter is

incorporated herein by reference and attached hereto as Exhibit 66.

97. On or around September 21, 2016, the law firm of Bendett & McHugh sent a letter to the

Plaintiff with regard to the Loan and the Property, stating that it had been retained by

Defendant Wells Fargo to initiate foreclosure proceedings on the Property. The letter

alleges that $473,939.20 is owed on the Loan, and threatens that if the Plaintiff does not

dispute the alleged debt's validity within thirty days, Bendett & McHugh will assume that

the debt is valid. A true and accurate copy of the September 21, 2016, letter is

incorporated herein by reference and attached hereto as Exhibit 67.

98. On October 7, 2016, a paralegal for the Plaintiff's attorney contacted Bendett & McHugh

and informed them of the Foreclosure Judgment regarding the Mortgage Loan and the

Property that had already entered on August 27, 2010 (Exhibit 2).

99. The combination of the Foreclosure Judgment and the Plaintiff's Chapter 13 Bankruptcy

discharge, the Plaintiff having surrendered the Property as part of her Chapter 13 Plan,

served to extinguish both her personal liability and property rights as well as her

ownership and contractual obligations.

100.     The Plaintiff is shocked and confused by the persistent contacts she has received

from Defendant Wells Fargo, which caused her to fear that she may still owe money on

the Loan despite the Foreclosure Judgment and the surrender of the Property in her Chapter 13 Bankruptcy case. The Plaintiff also worried that the home she now shares with her new husband, Greg, might be in jeopardy and that Defendant Wells Fargo might try to take that away from them. The Plaintiff fears that they would have no recourse if that were to occur, as they cannot afford to pay the amounts Defendant Wells Fargo alleges she owes. Defendant Wells Fargo's relentless letters, particularly those showing a Total Payment due that continued to increase each month and included a payment coupon, made the Plaintiff feel like Defendant Wells Fargo was just going to continue coming after her for money until she somehow paid it, which she knew she could not afford to do. Defendant Wells Fargo's own response to the Plaintiff's attorney (Exhibit 66) evidences that this is what Defendant Wells Fargo intended for the Plaintiff to believe.

101.     The Plaintiff experienced depression and fear as a result of Defendant Wells Fargo's unyielding actions, causing her to cry and also to experience feelings of anger. Due to the fear and anxiety that Defendant Wells Fargo caused her, the Plaintiff began taking Xanax and an antidepressant in order to try to cope. She also lost her desire to engage in previously enjoyable activities and stopped running and attending yoga, preferring instead to stay home drinking wine and trying to forget about the incessant debt collection notices and astronomic amounts of money Wells Fargo said she owed.

102.     That Defendant Wells Fargo continued to contact the Plaintiff seeking payments on the Mortgage Loan and for force-placed insurance it had obtained on the Property when Defendant Wells Fargo knew about the Foreclosure Judgment, knew that the Plaintiff had filed her Chapter 13 Bankruptcy Petition, knew that the Plaintiff had

surrendered the Property in her Chapter 13 Plan, and knew that the Plaintiff had received her Chapter 13 Bankruptcy Discharge evidences the outrageous and egregious nature of Defendant Wells Fargo toward the Plaintiff.

103.     That Defendant Wells Fargo repeatedly contacted the Plaintiff seeking payment on the Loan after Defendant Wells Fargo had received notice that the Plaintiff had filed for Chapter 13 Bankruptcy shows that Defendant Wells Fargo has inadequate policies and procedures in place for servicing mortgage loans where the mortgagor has filed for bankruptcy protection. Wells Fargo's September 13, 2016, letter (Exhibit 66) incorrectly stating the legal status of the Plaintiff's debt after her Chapter 13 discharge supports this conclusion.

104.     Defendant Wells Fargo's repeated communications to the Plaintiff while her Chapter 13 Bankruptcy case remained pending, including requests for payment and notifications that Defendant Wells Fargo would be charging the Plaintiff for force-placed insurance on the Property in which the Plaintiff no longer had any interest, evidence that Defendant Wells Fargo has engaged in a pattern and practice of attempting to collect on debt listed in the bankruptcy, where the property securing the debt is being surrendered in the bankruptcy plan in full satisfaction of the debt, and where the debtor no longer has any rights in the property, in violation of the Bankruptcy Code's automatic stay and the FDCPA.

105.     That Defendant Wells Fargo repeatedly contacted the Plaintiff seeking payment on the Loan after Defendant Wells Fargo had received notice that the Plaintiff had received her Bankruptcy Discharge shows that Defendant Wells Fargo has inadequate policies and procedures in place for servicing mortgage loans that have been discharged

in bankruptcy. Defendant Wells Fargo's actions toward the Plaintiff are wholly contrary
to the "fresh start" intention embodied within the Bankruptcy Code.

106.     Defendant Wells Fargo's repeated communications to the Plaintiff after she
received her Bankruptcy Discharge, including requests for payment and notifications that
Defendant Wells Fargo would be charging the Plaintiff for force-placed insurance on the
Property in which the Plaintiff no longer had any interest, evidence that Defendant Wells
Fargo has engaged in a pattern and practice of attempting to collect on debt listed and
discharged in bankruptcy, where the property securing the debt was surrendered in the
bankruptcy plan in full satisfaction of the debt, and where the debtor no longer has any
rights in the property, in violation of the Bankruptcy Code's discharge injunction and the
FDCPA.

107.     Upon information and belief, Defendant Wells Fargo has engaged in a pattern and
practice of attempting to collect on mortgage loan debt from debtors nationwide after a
debtor's personal liability on a home loan debt was discharged in bankruptcy and the
debtor had ceased living in the property. *See, e.g., In re Lemieux*, 520 B.R. 361, 370
(Bankr. D. Mass. 2014) (concluding that where debtors had vacated the property and had
their personal liability on the mortgage loan discharged in bankruptcy, a letter sent be
America's Servicing Company/Wells Fargo notifying debtors that force-placed insurance
had been obtained for their property and that debtors would be charged for the premium
violated the Bankruptcy Code's discharge injunction); *In re Haemmerle*, 529 B.R. 17, 31
(Bankr. E.D.N.Y. 2015) (concluding that Wells Fargo violated the Bankruptcy Code's
discharge injunction by repeatedly attempting to collect on a mortgage loan where Wells
Fargo had notice that the debtor's personal liability was discharged in bankruptcy, where

the debtor had ceased to live in the property, and awarding punitive damages and attorney's fees); *In re Nibbelink*, 403 B.R. 113, 122–23 (Bankr. M.D. Fla. 2009) (concluding that Wells Fargo's attempt to collect on mortgage loan debt discharged in bankruptcy, where debtors had vacated and sold the property, constituted a violation of the Bankruptcy Code's discharge injunction, and awarding actual and punitive damages and attorneys' fees); *In re Culpepper*, 481 B.R. 650, 660 (Bankr. D. Or. 2012) (concluding that Wells Fargo's attempts to collect on a mortgage loan where the debtor's personal liability was discharged in bankruptcy and the debtor no longer lived in the property violated the Bankruptcy Code's discharge injunction, and awarding emotional distress damages and attorneys' fees).

108.     As the principal for its agent, Defendant Wells Fargo, Defendant BNY Mellon is vicariously liable for the conduct of Defendant Wells Fargo toward the Plaintiff.

## IV.    Counts

**<u>COUNT ONE</u>: Violations of the Bankruptcy Code's Automatic Stay, 11 U.S.C. § 362**

109.     The Plaintiff re-alleges and incorporates the paragraphs above, and any and all exhibits referenced therein, as if fully set out herein.

110.     Defendant Wells Fargo's conduct during the pendency of the Plaintiff's Chapter 13 Bankruptcy case violated the Bankruptcy Code's Automatic Stay, 11 U.S.C. § 362(a)(6), enforceable through private right of action pursuant to 11 U.S.C. § 362(k), by intentionally attempting to collect on the Mortgage Loan debt outside of the bankruptcy case, when Defendant Wells Fargo had knowledge that the Mortgage Loan debt was listed in the Plaintiff's Chapter 13 Plan, said Plan providing for the surrender of the Property in full satisfaction of the debt.

111.     Defendant Wells Fargo's conduct during the pendency of the Plaintiff's Chapter 13 Bankruptcy case in violation of 11 U.S.C. § 362(a)(6) includes, but is not limited to: 1) sending letters to the Plaintiff informing her that force-placed insurance had been obtained on the Property and that she would be required to pay for it, and that her monthly payment may be increased to include the cost of the force-placed insurance; 2) sending letters to the Plaintiff informing her of changes in the interest rate and monthly payments on the Mortgage Loan; 3) sending letters to the Plaintiff informing her of changes in her escrow and mortgage payment amounts; and 4) sending letters to the Plaintiff that included a "Total Payment" amount that increased with each additional letter and had payment coupons attached that included dates for payments to be made by the Plaintiff to Defendant Wells Fargo. See Exhibits 4, 8-9, 15, 19-20, 22-24, 28-39, 41-46.

112.     Defendant Wells Fargo had knowledge of the Foreclosure Judgment, had knowledge of the Plaintiff's Chapter 13 Bankruptcy filing, and had notice that the Plaintiff was surrendering the Property in full satisfaction of the debt in her Chapter 13 Bankruptcy, yet Defendant Wells Fargo repeatedly sent harassing letters to the Plaintiff throughout the duration of her bankruptcy that served to coerce the Plaintiff to make payments on debt to Defendant Wells Fargo outside of the Plaintiff's bankruptcy case. Wells Fargo's own letter dated September 13, 2016 (Exhibit 66) evidences this by stating that it is allowed to continue to contact the Plaintiff until it receives payment on the Loan due on November 1, 2008.

113.     As detailed above, Defendant Wells Fargo's actions throughout its relationship with the Plaintiff demonstrate that Defendant Wells Fargo engages in a pattern and practice of violating the Bankruptcy Code's Automatic Stay.

114.     As a result of Defendant Wells Fargo's unceasing actions, the Plaintiff has suffered actual damages, including, but not limited to, increased emotional distress, anxiety, depression, and feelings of confusion, anger, and fear.

115.     The Plaintiff also incurred additional reasonable attorneys' fees and costs described above that she would not have otherwise incurred but for Defendant Wells Fargo's actions.

116.     Defendant Wells Fargo's actions are unfair, harassing, and demonstrate a willful and intentional violation of 11 U.S.C. § 362(a)(6).

117.     At all times relevant, Defendant Wells Fargo was acting as the agent of Defendant BNY Mellon. Defendant BNY Mellon, as principal for Defendant Wells Fargo, is vicariously liable for Defendant Wells Fargo's conduct and, as owner of the Loan, for employing Defendant Wells Fargo to service the Plaintiff's Mortgage Loan. Defendants are jointly and severally liable for such violations.

118.     The Plaintiff is entitled to recover from Defendants actual and compensatory damages, including costs and attorneys' fees, and punitive damages in this matter pursuant to 11 U.S.C. §§ 362(a)(6) and 362(k), and such other and further relief as the Court deems just and proper.

**COUNT TWO: Violations of the Bankruptcy Code's Discharge Injunction, 11 U.S.C. § 524**

119.     The Plaintiff re-alleges and incorporates the paragraphs above, and any and all exhibits referenced therein, as if fully set out herein.

120.     Defendant Wells Fargo's conduct violated the Bankruptcy Code's Discharge Injunction, 11 U.S.C. § 524(a)(2), enforced pursuant to 11 U.S.C. § 105, by intentionally attempting to collect on the Mortgage Loan debt that had been discharged in the Plaintiff's Chapter 13 Bankruptcy case. Defendant Wells Fargo had actual notice of the discharge.

121.     Defendant Wells Fargo's conduct in violation of 11 U.S.C. § 524(a)(2) includes, but is not limited to: 1) sending letters to the Plaintiff informing her that force-placed insurance had been obtained on the Property and that she would be required to pay for it, and that her monthly payment may be increased to include the cost of the force-placed insurance; 2) sending letters to the Plaintiff informing her of changes in the interest rate and monthly payments on the Mortgage Loan; 3) sending a letter to the Plaintiff informing her of the results of a review of her escrow account alleging that her Loan was delinquent and demanding monthly payments of either $2,607.09 or $3,269.09 to cure the alleged arrearage; and 4) sending letters to the Plaintiff that included a "Total Payment" amount that increased with each additional letter and had payment coupons attached that included dates for payments to be made by the Plaintiff to Defendant Wells Fargo. See Exhibits 50-52, 54-59.

122.     The Plaintiff's personal liability on the Loan terminated when she received her bankruptcy discharge and she had a right to expect a "fresh start" as contemplated by the Bankruptcy Code.

123.     As a result of the Foreclosure Judgment and the Plaintiff's bankruptcy discharge, Defendant Wells Fargo had no contractual or *in rem* relationship to the Plaintiff, and therefore had no reason to be sending letters to her that asserted any such relationship.

124.     Defendant Wells Fargo's repeated, unyielding letters to the Plaintiff coerced the Plaintiff into fearing that she somehow still owed money on the Loan to Defendants and she feared that the harassing communications would never end unless she paid the money they demanded, money the Plaintiff could not afford to pay.

125.     Defendant Wells Fargo's purposeless letters to the Plaintiff relating to debt that had been discharged in bankruptcy constitute coercion and harassment in violation of the Bankruptcy Code's Discharge injunction.

126.     As detailed above, Defendant Wells Fargo's actions throughout its relationship with the Plaintiff demonstrate that Defendant Wells Fargo engages in a pattern and practice of violating the Bankruptcy Code's Discharge Injunction.

127.     As a result of Defendant Wells Fargo's unceasing actions, the Plaintiff has suffered actual damages, including, but not limited to, increased emotional distress, anxiety, depression, and feelings of confusion, anger, and fear.

128.     Defendant Wells Fargo's actions are unfair, harassing, and demonstrate willful and intentional violation of 11 U.S.C. § 524(a)(2).

129.     At all times relevant, Defendant Wells Fargo was acting as the agent of Defendant BNY Mellon. Defendant BNY Mellon, as principal for Defendant Wells Fargo, is vicariously liable for Defendant Wells Fargo's conduct and, as owner of the Loan, for employing Defendant Wells Fargo to service the Plaintiff's Mortgage Loan. Defendants are jointly and severally liable for such violations.

130.     The Plaintiff is entitled to recover from Defendants actual and compensatory damages, including costs and attorneys' fees, and punitive damages in this matter

pursuant to 11 U.S.C. §§ 524(a)(2) and 105, and such other and further relief as the Court deems just and proper.

**COUNT THREE: Violations of the Maine Consumer Credit Code, 9-A M.R.S.A. § 9-403**

131.     The Plaintiff re-alleges and incorporates the paragraphs above, and any and all exhibits referenced therein, as if fully set out herein.

132.     By the communications detailed above, Defendant Wells Fargo, in attempting to collect on the Mortgage Loan debt from the Plaintiff on behalf of Defendant Wells Fargo's principal, Defendant BNY Mellon, claimed and attempted to enforce a right that had been relinquished pursuant to final Orders, the Foreclosure Judgment and the Bankruptcy Discharge, respectively, of the Maine District Court, York County, and the United States Bankruptcy Court for the District of Maine. See Exhibits 4, 8-9, 15, 19-20, 22-24, 28-39, 41-46, 50-52, 54-59, 61-62.

133.     Claiming and attempting to enforce a right barred by final Orders of Maine and federal courts is in direct violation of the Maine Consumer Credit Code, 9-A M.R.S.A. § 9-403(G).

134.     Pursuant to 9-A M.R.S.A. § 9-408, any violation of 9-A M.R.S.A. § 9-403(G) constitutes a per se violation of the Maine Unfair Trade Practices Act, 5 M.R.S.A. §§ 205-A *et seq.*

135.     At all times relevant, Defendant Wells Fargo was acting as the agent of Defendant BNY Mellon. Defendant BNY Mellon, as principal for Defendant Wells Fargo, is vicariously liable for Defendant Wells Fargo's conduct and, as owner of the Loan, for employing Defendant Wells Fargo to service the Plaintiff's Mortgage Loan. Defendants are jointly and severally liable for such violations.

136.     The Plaintiff is entitled to actual, including emotional distress, damages, statutory damages, costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

**COUNTS FOUR AND FIVE: Violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692** *et seq.*, **and the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §§ 11001** *et seq.* **(collectively, the "FDCPA")**

137.     The Plaintiff re-alleges and incorporates the paragraphs above, and any and all exhibits referenced therein, as if fully set out herein.

138.     Defendant Wells Fargo violated the FDCPA by, including but not limited to,: 1) falsely representing the character, amount, and legal status of the Mortgage Loan debt through its letters to the Plaintiff dated June 9, June 16, July 17, August 5, and December 10, 2015, January 27, June 9, June 23, June 30, July 18, July 28, July 29, and August 10, 2016, Exhibits 50-62, as detailed above (15 U.S.C. § 1692e(2)(A), 32 M.R.S.A. § 11013(2)(B)(1)); 2) the use of false representations or deceptive means to collect or attempt to collect on the Mortgage Loan debt (15 U.S.C. § 1692e(10), 32 M.R.S.A. § 11013(2)); 3) engaging in conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with collection of the Mortgage Loan debt by delivering a relentless stream of written communications (Exhibits 50-52, 54-59) to her seeking payment not owed following the Plaintiff's Bankruptcy Discharge and demanding the Plaintiff pay the annual premium cost for force-placed insurance for the Property that was the subject of the Mortgage Loan debt and the Foreclosure Judgment, surrendered in the Plaintiff's bankruptcy case, and in which the Plaintiff no longer had any interest (15 U.S.C. § 1692d, 32 M.R.S.A. § 11013(1)); 4) communicating directly with the Plaintiff when Defendant Wells Fargo knew that the Plaintiff was represented by

an attorney with respect to the Mortgage Loan debt and Defendant Wells Fargo had knowledge of the attorney's name and address (15 U.S.C. § 1692c(a)(2), 32 M.R.S.A. § 11012(1)(B)); and 5) using unfair or unconscionable means to collect or attempt to collect on the Mortgage Loan debt (15 U.S.C. § 1692f, 32 M.R.S.A. § 11013(3)).

139.    Defendant Wells Fargo had knowledge that the Plaintiff was represented by an attorney (Molleur Law Office) with regard to the debt (the Mortgage Loan), had knowledge of the Plaintiff's attorney's name and address, and the Plaintiff's attorneys responded within a reasonable time to communications from the debt collector (Defendant Wells Fargo). See Exhibits 11-14, 25, 27.

140.    Defendant Wells Fargo's continued, unyielding written communications to the Plaintiff regarding the Mortgage Loan debt on the Property, that was the subject of the Foreclosure Judgment, surrendered in the Plaintiff's bankruptcy case in full satisfaction of the debt, and for which the Plaintiff received her Bankruptcy Discharge, meaning the Plaintiff no longer had any interest or obligation thereon, demonstrate that Defendant Wells Fargo engages in a pattern and practice of violating the FDCPA.

141.    As a result of Defendant Wells Fargo's actions, the Plaintiff suffered actual damages, including, but not limited to, harassment, coercion, increased emotional distress, anxiety, depression, and other and additional mental and emotional distress as detailed above.

142.    At all times relevant, Defendant Wells Fargo was acting as the agent of Defendant BNY Mellon. Defendant BNY Mellon, as principal for Defendant Wells Fargo, is vicariously liable for Defendant Wells Fargo's conduct and, as owner of the Loan, for

employing Defendant Wells Fargo to service the Plaintiff's Mortgage Loan. Defendants are jointly and severally liable for such violations.

143.      The Plaintiff is entitled to recover actual damages, including emotional distress damages, statutory damages, costs and attorneys' fees from Defendants, and such other and further relief as this Court deems just and proper.

**Demand for Jury Trial**

Please take notice that the Plaintiff demands a trial by jury in this action.


Dated at Biddeford, Maine, this 16th day of November, 2016.

Diane Lamprey

Plaintiff

By and through her attorneys

*/s/ Andrea Bopp Stark*
Andrea Bopp Stark, Esq.
Christopher J. Keach, Esq.
Molleur Law Office
419 Alfred Street
Biddeford, ME 04005-3747
207-283-3777
andrea@molleurlaw.com
chris@molleurlaw.com


Gary Goldberg, Esq.
Terry Garmey & Associates
482 Congress Street, Suite 402
Portland, ME 04101
207-331-3111
ggoldberg@garmeylaw.com